By the Court. Vanderpoel, J.
The question is whether the plaintiffs received these notes under such circumstances as to protect them from the alleged payment by the defendant to Pemberton the payee ; and this presents, in a form somewhat new, the ever recurring question, when the indorsees of a note are to be déemed bona fide holders in a commercial sense, so as to preclude a defence existing at the time of the transfer. From the evidence, it seems that the notes in suit were delivered to the witness Pemberton, in payment for merchandise sold by him ; that before he transferred the notes to Mills, an agreement was made between him and the defendant, by which the defendant was to return to Pemberton an invoice of goods, valued at about $3000, and to pay in cash $1000; in consideration of which Pemberton was to assume certain liabilities of the defendant; and the return of the goods was to be considered a payment of the notes upon which this suit is brought; that this agreement was consummated on the 31st of January; but Pemberton did not return the notes, and says he cannot tell why he did not return them; that afterwards, he purchased exchange from Oliver P. Mills on a credit of forty-five days, to he secured by the notes of the witness, and by collateral notes; that on the 8th of February he passed to Mills, as such col-laterals, the notes in suit.
On the 3d of February, Mills applied to the plaintiffs for the *155 purchase of 500 barrels of flour. It was finally sold to him, on the following terms. Mills was to give in payment his own note at thirty days, and collateral security, which was to be notes. The flour was delivered to Mills on the 5th of February, 1846, and the collaterals were in pursuance of the contract, delivered about the 14th, 15th, or 16th of February. The note .of Mills has not been paid. At the time of the agreement for the sale of the flour, the particular collaterals to be turned out were not specified; but a witness testified, that collaterals meant notes, when not otherwise expressed. Now, are the plaintiffs such bona fide holders for value, as to enable them to recover the notes, notwithstanding the alleged payment of the defendant to Pemberton 1
The principle is well established, that receiving the transfer of a note as collateral security for the payment of a pre-existing debt, is not taking it in the ordinary course of trade and for a valuable consideration, as against the equities of the maker. (Wardell v. Howell, 9 Wend. 170; Coddington v. Bay, 20 Johns. 637.) To protect the holder of a negotiable security, which has been improperly transferred to him in fraud of' the prior legal or equitable rights of others, he must not only have taken it without notice, but must also have parted with something of actual value, upon the credit or faith thereof. Merely receiving it in payment or security of an antecedent debt, is not sufficient. (Stalker v. McDonald, 6 Hill, 93.) After the very able and elaborate opinion in that case, there can no longer be doubt as to what the law is on this subject. But in the application of the principle, the question whether a case comes within the well established rule, still leaves abundant room for controversy. This is not the case of receiving the notes as security for a pre-existing debt, without parting with any thing of value. The giving collaterals, was one and an indispensable condition or consideration, on which the plaintiffs parted with their flour. They would not, when the contract was made, receive the personal responsibility of Mills alone for payment. Had they received the collaterals simultaneously with the delivery of the flour, and as part of the consideration therefor, their title to pro, teetion as against the equities of the defendant, would have *156 been unquestionable. Here the note of Mills, the vendee, was not given when the flour was delivered, but, according to the usage as proved, the vendor generally calls for the stipulated security on a sale to be secured by collaterals, a number of days after the goods are delivered, according to his leisure. Whether the notes were delivered at the time of the delivery of the flour, is not the true test in this case. The true and controlling question is, whether the plaintiffs parted with their flour on the condition and with the understanding that collateral security ■ was to be given. Of this, there can surely be no doubt. The collateral security was one of the inducements to parting with their property. If so, no good reason can be assigned why they should not have the same benefit of the collateral notes, that they would have had, had they received them simultaneously with the delivery of the flour. We therefore hold, that the plaintiffs received the notes in suit under such circumstances as to entitle them to protection against the alleged payment of the defendant to the payee, before they were transferred to the plaintiffs.
It is urged in behalf of the defendant, that these particular notes were not specified as among the collaterals that were to be transferred. We cannot perceive how this can weaken the position of the plaintiffs.. Collateral security was with them an indispensable consideration for parting with their property. These notes were offered and accepted, in satisfaction of such consideration. What was general when the contract was made, was rendered specific and certain when the notes were delivered and accepted. It is not pretended that the plaintiffs knew, or are chargeable with notice, that Mills had no authority to pledge or part with the notes; and having been passed before they matured, the plaintiffs are entitled to judgment.