JOHN C. WINNE et al., Survivors, Appellants, v. FRANCIS MACDONALD et al., Respondents.

*Contract— Vendor—Divisibility—Fraud—Bona-fide Purchaser—Delivery.*

A party who has acquired possession of property by means, as between him and his vendor, which would render his title invalid, may, nevertheless, impart a good title to a bonâ fide purchaser from him.

A contract for the delivery of two cargoes of wheat, although entire in form, may be divisible at the option of the parties; and when they have treated it as divisible, in requiring payment when one cargo has been delivered, &c., it will be deemed to be divisible.

On the 21st of October, 1856, A. F. De Luze, a produce broker, sold for the Plaintiffs to Theodore Perry, through his broker, J. W. Spencer, 3,921 bushels Western Red Wheat, then on canal-boat D. Hibbard, and also 3,500 bushels of similar wheat, then on canal-boat Ural, at $1.54 per 60 pounds, to be delivered to vessel in good shipping condition, quality as per sample, cash.

At the time of the sale De Luze was informed by Spencer that the wheat was to be sent on board the ship Compromise, then lying at pier No. 14, East River, and the Plaintiffs were directed to send the wheat there. The Compromise was bound for Glasgow.

The Ural, containing the wheat in question, was first sent alongside of the Compromise. The wheat was in bulk, not in bags. A measurer was employed, as usual, to measure the wheat on its transfer from the canal-boat to the ship.

By the practice then prevailing it was the duty of the purchaser to select one of the Board of Measurers to measure the grain, whose duty it was, when the measurement was completed, to send to the seller his return in duplicate; the one being called a whole and the other a half return—the only difference between them being, that in the latter one-half of the measurer's charge for measuring and screening is stated, which the purchaser was to

refund to the seller when paying for the wheat, the seller paying the whole charge, in the first instance, to the measurer.

The discharging and measuring of this boat-load of wheat from the Ural was completed on the 22d of October; and on the afternoon of that day, or on the morning of the 23d of October, the whole and half returns were sent by the measurer to the Plaintiffs.

On the morning of the 23d, the Plaintiffs sent the half return to Perry, with a bill of parcels for this canal-boat load, amounting to $5,400.29. This was done without any request or solicitation on the part of Perry. It was testified that, by the usage and custom of the grain trade in the city of New York in October, 1856, upon sales of wheat in bulk, delivered on board of ships, the vendor was considered as having completed a delivery when the measurer's half return had been sent by him, with a bill of parcels, to the vendee, the possession of the half return giving to the vendee the control of the wheat, and entitling him to a bill of lading from the ship.

On the same day—the 23d—Sheldon met Perry on the Corn Exchange, and requested a check for the amount of the bill of parcels of this boat-load of wheat. Perry replied he would pay on Saturday; to which Sheldon made no objection. No mention was made at the time about the other canal-boat load of wheat, the return of which had not then been received from the measurer, nor did Sheldon then know whether or not this other boat-load would be on board the ship by or before Saturday.

Prior to the 23d of October, 1856, the Defendants, who were commission merchants in the city of New York, largely engaged in the business of advancing on grain and other produce consigned for sale to their houses in Liverpool and Glasgow, had been doing this business with Perry. On the morning of that day Perry came to the Defendants' office and asked James Hutchison, who was a clerk of the Defendants, and entrusted with the business of making advances on grain on their behalf, to give him $5,000, which Hutchison declined doing. Perry then told Hutchison he wanted it on account of the Compromise, stating that there was one boat-load of wheat on board, and that he wanted an advance

on that of $5,000. The money was, upon this statement, given. to Perry. Perry had previously told Hutchison that he was going to ship about 7,000 bushels of wheat by the Compromise, and this money was given to Perry, as he testified, as an advance on the wheat in question.

It was the practice of the Defendants to send for and get the measurer's return from Perry for produce which they had advanced upon, whenever they wanted to obtain the bills of lading, which they generally did not require until the day before the sailing of the steamer, unless Defendants had negotiated their exchange, in which case they wanted them sooner. At the time· of making this advance neither Hutchison nor MacDonald had any knowledge of any difficulty in Perry's affairs.

On the morning of the 24th of October, the Defendants sent to Perry for the measurer's return for the wheat above mentioned, and having received the same, the Defendants, on the same day, obtained the bill of lading in their own name for the said wheat,. from the master of the ship Compromise, upon the production: and delivery to him of the measurer's return.

The Defendants, at this time, had no notice of the Plaintiffs'' claim, nor had any demand been made upon them, or on the ship-owners, for the wheat.

At the time of the sale of the wheat in question, and of the delivery of the measurer's return to the Defendants, Perry's credit stood well in the market ; and, although his notes laid over at three o'clock on the 23d of October, the evidence of Perry will authorize the inference that his failure was not premeditated, and that he was compelled to suspend payment by reason of unforeseen necessities. At the trial the presiding Judge, among other things, charged the jury, that if the Plaintiffs delivered a part of the wheat, and asked for payment, and acquiesced in a delay of such payment until the following Saturday, and in Perry's detention of the measurer's return and bill of parcels, with the view of giving, and consenting to give Perry credit, irrespective of the question whether the other grain was or could be delivered or not, and if the measurer's return, which enabled the Defendants

14

to get the bill of lading, was delivered, so as to give Perry the control of the wheat, with the intent to give him such control, or if there was a consent to delay payment until the following Saturday, irrespective of the question whether the other grain could then be completely delivered or not, then there was an absolute and unqualified delivery of the wheat, unless the purchase and delivery were procured by Perry through fraud; but if the Plaintiffs, in putting the grain on shipboard, only meant to follow Perry's instructions, placing the grain on the ship designated by him as the place of delivery, but without any intent to give him control over it, and intending to require payment of the price, according to the contract, then, although they sent the measurer's return to Perry's office, they had a right to reclaim, if he did not pay when all the grain was delivered; and in that case the delivery was conditional.

The question of fraud on the part of Perry in making the purchase was submitted to the jury upon the evidence, and they were instructed that, if the purchase and delivery were made and procured by fraud, Perry would not be entitled to retain the property against the Plaintiffs. The jury were further instructed, that if they should be of opinion that the purchase was fraudulently made or the delivery conditional, yet if the advance of the Defendants was made on the security of the wheat, and it was at the time of the advance pledged as security for the repayment of the money, so far as that result could be effected by a clear understanding between the parties, that the Defendants should have control of the wheat thus offered, and should have a delivery of the measurer's return and bill of lading, and that understanding was carried into effect the next morning, by the delivery of the measurer's return, and the procurement of the bill of lading, then the Defendants' right of possession was valid, provided the advance was made in good faith, in the belief that Perry was the owner.

Exceptions were duly taken by the Plaintiffs' counsel to the several rulings, and refusals to rule, on the trial. The jury returned a verdict for the Defendants, on which judgment was

duly entered, and affirmed on appeal to the General Term of the Supreme Court, and from this judgment the Plaintiffs have appealed to this Court.

*J. Larocque* for Appellants.

*H. Nicoll* for Respondents.

BACON, J.—This case has been twice before the Superior Court upon appeal from judgments rendered at Special Term. On the first trial the jury found for the Plaintiffs, upon a charge to which exceptions were taken by the Defendants, and on appeal the verdict was set aside, and a new trial granted. Upon this occasion an opinion was given by the General Term, which is reported under the name of Durbrow *v.* McDonald, in 5 Bos. 130. On examining the statement of facts in that case, and comparing them with the evidence as it appears upon the case as now presented, there is no appreciable difference between them, with, perhaps, one exception.

It seems to have been assumed by the Court, in its opinion, although the point is not very clearly stated, that the measurer's return in respect to the cargo of the boat Ural, was received by the Defendants before they made the advance of $5,000 to Perry upon the wheat in question. It now appears that this return was not, in point of fact, delivered to the Defendants until the morning of the 24th, the day after the advance was made. It is shown that it was sent to the office of Perry on the 23d, but at what particular hour does not appear, except that the son states it was in the morning, nor that Perry had actually seen it before he made the application to the Defendants for the advance.

This is deemed a very significant circumstance by the counsel for the Plaintiffs; but in view of the questions upon which this case ultimately turns, I do not deem it of any special materiality.

In the opinion rendered after the first trial by the Court, it is held, that upon the uncontradicted facts of the contract for the purchase of the wheat, the delivery of the cargo of the Ural on board the Compromise, the sending of the measurer's return to the

purchaser, the request of the latter, that the vendors would wait for payment until Saturday, unobjected to; assuming that there was no fraud in obtaining the delivery, the defendants in this case having, in good faith, made an advance on the security of the wheat, and on the faith of Perry being the owner, could obtain a valid title thereto, as against the original vendor, to the extent of their advance, although the buyer should fail after such advance, and be unable to fulfil his contract to pay the purchase price; that the delivery being all the delivery the contract required, or the parties contemplated, it was subject to no condition, unless it be an implied one that payment should be made when all the wheat was delivered.

It was further held, that where an advance was made to the buyer, upon the understanding, at the time, of both parties, that it was made on the security of the wheat, and the person advancing should thereupon have the control of it, and a bill of lading furnished, and such bill is immediately thereafter issued and delivered, the party thus advancing has, from that time, the right of possession and control as against the seller.

In the light of this opinion, and guided by its general principles, the case was brought to trial the second time. The proof was substantially the same, and the same questions presented themselves, with one exception. The point that the purchase of the wheat by Perry was fraudulent, does not, on the first trial, seem to have been made; at any rate, the charge of the Judge at that trial was, that there was not sufficient evidence in the case to raise the question that such purchase was fraudulent; and this passed without exception or comment. On the last trial considerable evidence was given, bearing on that subject, and the question was distinctly presented to the jury by the presiding Judge.

There are three aspects which the case presented, and which it became the duty of the Court to bring to the consideration of the jury:

1. Whether Perry was guilty of fraud in the purchase of the wheat, and, therefore, the possession, as between him and the Plaintiff, was malâ fide, and the property was susceptible of rec-

lamation, if it had been retained in his hands.    2. If obtained without fraud, and the delivery had been made with a waiver of payment, and with intent to give Perry control of it, whether the transaction could be impeached between those parties, and if so, whether the title of the Defendants was not entirely unassailable.    3. Assuming that Perry's purchase was fraudulent, or that the delivery was conditional, yet if the Defendants advanced their money upon the wheat in good faith, believing it to be Perry's property, and it was delivered to them as security, they were not entitled to hold it.

The charge is given at length in the case, and is elaborate with care and discrimination, and, in my judgment, it covers every aspect the case presents, and every proposition of law the evidence is calculated to raise.

On the subject of Perry's acquisition of the property, the jury were told, that, if the purchase and delivery were produced by fraud, then Perry could not be entitled to retain the wheat as against the Plaintiffs.

This question was distinctly submitted to the jury upon the evidence, and that evidence was briefly recapitulated.    It stood almost wholly upon the testimony of Perry himself, who was subjected to a lengthy and searching cross-examination.

It is made a matter of complaint that it was so presented that but one result could be anticipated.

But it surely is not the subject of exception, and should not be of complaint, if a witness commends himself to the Court by the apparent candor and fairness of his testimony, that a comment upon his evidence to that effect should be indulged from the bench.    There is no rule of practice or propriety that forbids a Judge from stating the impression which testimony, either as to its subject-matter or the manner of its delivery, makes upon his mind; leaving it, however, to the jury, as it was in this case, to come to their own conclusions.

There can be little room to question that the jury did reach the conclusion that Perry was guilty of no fraud in making the purchase, although, if they had come to an opposite result on this

question, it would not have established the right of the Plaintiffs to recover, since it is a well-established rule that a party who has acquired possession of property by means which, as between him and his immediate vendor, would render his title invalid, he may, nevertheless, impart a good title to a bonâ fide purchaser from him (Mowrey *v.* Walsh, 8 Cow. 238 ; Root *v.* French, 13 Wend. 570).

If, now, we lay the question of fraud, as I think we well may, out of the case, assuming that the jury found there was no fraud in the purchase, it is important to consider what the transaction was between the Plaintiffs and Perry, touching the delivery of the wheat, and how far his transfer to the Defendants was valid, and their title can be upheld.    It is insisted, on the part of the Plaintiffs, that the contract for the purchase of the wheat was an entire contract for the delivery of both loads, and under it the Plaintiffs could not require payment for either load until both were delivered.

This is undoubtedly true, and so the Court instructed the jury; but it is equally true that, although entire in form, it was divisible at the election of the Plaintiffs, the purchasers also assenting thereto.

The demand of payment by the Plaintiffs of Perry for the cargo of the Ural, and the sending of the measurer's return, assumed a complete delivery of that cargo, which was full and entire, and not in any respect dependent upon the delivery of the cargo of the other boat.    On this demand Perry acceded, and requested only credit for the payment until Saturday, which was unobjected to on the part of the Plaintiffs.    This view was clearly presented to the jury by the presiding Judge.    He told them the Plaintiffs could deliver a part, and ask for payment, and if they did so, and, when the request for delay of payment until Saturday was made by Perry, they acquiesced and allowed him to retain the measurer's return, with a view of giving and consenting to give him a credit as asked, irrespective of the question whether the other cargo was then delivered or not, then it was an absolute and unqualified delivery to Perry, which vested in him the title, so that he could pledge this wheat as security to the Defendants.

In another part of the charge, when referring to this proposition, he told the jury that if, upon the other hand, the Plaintiffs only meant to follow the instructions of Perry, placing the wheat on the ship designated as the place of delivery, but without any intent to give him control over it, and intending and expecting to require payment of the price according to the terms of the bill of sale, which were "payment cash," then, although they sent the measurer's return to the office, they had a right, as against Perry, to reclaim the grain, if he did not pay according to the terms of the bargain when the whole of the grain was delivered.

No proposition more broad than this could have been asked by the Plaintiffs. It conceded all they had the right to demand as competent or possible for the jury to find from the evidence; and the two propositions together covered the whole case. It cannot be denied that there was evidence sufficient to justify the submission to the jury of the question whether the Plaintiffs consented to give Perry a credit for the boat-load of wheat, then delivered, until Saturday, and that Perry then agreed to pay for it, irrespective of the delivery of the other boat-load. The delivery of the cargo of the Ural was entire and complete, insomuch that, I think, it cannot be doubted that if the vessel and cargo had been destroyed by fire intermediate to the delivery and the day to which the credit was extended, the loss would have been Perry's, and not the Plaintiffs'.

The whole proposition was, in my judgment, entirely sound in law, and gave the case, in this aspect of it, to the jury with perfect fairness to both sides. A finding of the jury in favor of the Defendants under such an instruction, is necessarily decisive of the whole case.

If the delivery was, in the judgment of the jury, as derived from the evidence, absolute and unqualified, and vested the title in Perry, he could, of course, make any transfer he pleased.

If the Plaintiffs had no remedy against him, they could have none against his transferees. The verdict of the jury in response to these propositions is, therefore, a determination of the case in favor of the Defendants.

If I am right in this conclusion, the further inquiry as to the character of the transaction between Perry and the Defendants, by which the latter acquired their interest in the wheat, would seem to be superseded. But if this should not be deemed entirely clear, there remains to be considered the third aspect of which the case is susceptible, and which was also presented to the jury.

This involves the instruction given by the Judge to the jury to enable them to determine whether the Defendants were bona fide holders of the wheat as against the Plaintiffs. The instructions on this point were given in response to the claim of the Plaintiffs' counsel, that there was no delivery of the wheat, as security for advances made at the time; that the advance was made before the property was transferred; that obtaining possession of the measurer's return and bill of lading was an attempt to secure a pre-existing debt, and, therefore, if the purchase was fraudulently made, or the delivery conditional, the Plaintiffs were entitled to recover the grain. The answer to this claim was given in the language of the decision of the Supreme Court, when the new trial was ordered, and, in a condensed form, it was this: that if the advance was made upon the security of the wheat, and the wheat at the time was pledged as security for the money, so far as that could be effected by a clear understanding that the Defendants should have the control of the wheat, and that they should have the measurer's return and a bill of lading, and this understanding was carried out the next morning by the delivery of the measurer's return and the procurement of the bill of lading, then the right of possession of the Defendants was valid against the Plaintiffs, provided their advance was made in good faith, and in the belief that Perry was the owner.

This proposition, I think, was unexceptional. It proceeds upon the conclusion that Perry's possession was either obtained by fraud, or that the delivery to him was conditional. But neither of these considerations would affect the result, provided the jury should find the Defendants' claim was bona fide within the terms of this instruction.

A fraudulent vendee can, as we have seen, convey a good title

to a bona fide purchaser, and I understand precisely the same rule to obtain where there has been a conditional sale, accompanied by a delivery, or placing the property in the hands, or under the control of the original vendee, with the usual indicia of title (Wait *v.* Green, 39 N. Y., 556).

The consideration has been strongly pressed that the measurer's return was not delivered to the Defendants at the time their advance was made; and it is even insisted that there is no proof that it was in the possession of Perry at the time he obtained the advance. It may be enough to say on this point, perhaps, that the evidence on that subject is not entirely conclusive either way. It is certain that it was sent to his place of business on the morning of the 23d; and it may be claimed there was enough to warrant the jury, if that fact was effectual, in finding that he was in possession of the measurer's return at the time he received the advance. No evidence tending to negative this presumption was given by the Plaintiffs, and it deserves remark that the attention of the presiding Judge was not called to this point in any of the requests to charge, or in the exceptions to the charge as actually given.

It was not material that the Defendants did not obtain actual possession of the measurer's return until the next day. It was undoubtedly an important document, not as a muniment of title in the strictest sense of the term, nor was it so treated by the Judge, who, in answer to a suggestion of the Plaintiffs' counsel as to the scope of his charge on that subject, replied, that all he meant to say was, that by means of the measurer's return the Defendants obtained the bill of lading from the ship, but whether it gave them the legal right to it he did not say.

I think he might safely have said that the measurer's return did entitle them to the bill of lading, and the fact appears abundantly that the bill of lading was actually made out and issued to the Defendants before any demand of the wheat was made by the Plaintiffs, and so far as is shown, before the Defendants were apprised of any assertion, on behalf of the Plaintiffs, of any interest in or a right to reclaim the wheat. The fact that

the Defendants did not receive the measurer's return until the day after their advance, is in no respect material. In Cartwright *v.* Wilmerding (24 N. Y., 521), this Court has decided that the circumstance, that the pledge and the documentary muniments thereof are separated by some interval of time is not otherwise important than as it may raise a suspicion with the jury that this security was an after-thought.

The Court in that case say, to hold that a person pledging goods " cannot receive the money on one day, and complete the contract of pledge on the next, seems a strange position." . . . . If the time between the two acts (long or short) be such as to throw doubt on the transaction, and create the impression that the advance was a loan without security," then the transaction is not protected.

In this case the interval was but a day, and there is nothing in the conduct of the parties, or the character of the transaction, to raise the suspicion that what they did on the twenty-fourth was an after-thought, and not a fair and legitimate carrying out of the original acts and intents of the parties.

I have not thought it important to notice the several requests to charge made by the counsel for the Defendants, because, in substance, the matter insisted upon by him, so far as the law of the case required, were charged or presented by the presiding Judge to the jury, and a further discussion of them would not be profitable or necessary.

There are some minor exceptions, relating to the reception and exclusion of evidence upon the trial, which were not pressed upon the argument, and which, because of their immateriality, I do not deem it necessary to discuss.

Upon the whole case, I am unable to perceive that any error was committed in the charge and rulings upon the trial, and am of opinion that the judgment should be affirmed.

All affirm, except Clerke, J.—but Grover, J., upon different grounds.

JOEL TIFFANY,
State Reporter.