GEORGE M. BARNARD et al., Respondents, *v.* GEORGE W. CAMPBELL et al., Appellants.

A vendor who has been induced to part with his property by the fraud of the vendee can only be defeated of his right to reclaim the same within a reasonable time by one who has paid value or made advances, or incurred responsibilities upon the credit of the apparent title of the vendee, and without notice of the fraud or knowledge of circumstances to put him upon inquiry.

One to whom the property has been delivered by the fraudulent vendee in payment of a precedent debt, or in performance of an executory contract of sale made prior to the acquiring possession thereof, or of some evidence of title thereto by the latter, although a consideration was paid at the time of the contract, is not a *bona fide* purchaser for value and cannot hold the property as against such vendor.

*Fenby* v. *Pritchard* (2 Sandf., 151) overruled; *Lee* v. *Kimball* (45 Me., 172)

and *Butters* v. *Haughwout* (42 Ill., 18) disapproved; *Winne* v. *McDonald* (39 N. Y., 233) distinguished.

(Decided June 16, 1874.)

THIS was a motion for reargument. The case is reported in 55 New York, 456. The facts are briefly these:

On the 21st August, 1863, one E. P. Jeffries contracted, through his broker, to sell defendants, who were merchants in New York, 1,800 bags of linseed. Defendants upon the same day, pursuant to the contract, mailed to Jeffries their notes for the amount of the purchase, which were received by him and immediately pledged as collateral for a loan. On the twenty-first Jeffries contracted to purchase of plaintiffs 1,800 bags, and on the twenty-fourth the latter, induced by the fraudulent representations of Jeffries, delivered to him an order upon a warehouse for 1,370 bags; these he received and shipped to defendants in part fulfillment of his contract with them. He took a bill of lading of the goods deliverable to defendants; this he forwarded to them on the twenty-fifth. On the arrival of the seed plaintiffs demanded it but defendants refused to deliver.

*James C. Carter* for the motion.

*Edwards Pierrepont* opposed.

ALLEN, J. The question considered by this court, and discussed in the opinion delivered on giving judgment upon this appeal was that distinctly presented by the exceptions to the ruling and decisions of the judge upon the trial, and as that was decisive and led to an affirmance of the order granting a new trial and a final judgment for the plaintiffs, it was not deemed necessary, in assigning the reasons for the judgment, to canvass particularly the argument, or review in detail the authorities cited by counsel upon a somewhat different view of the case. The entire brief, and all the authorities cited, were, nevertheless, carefully examined and

considered; and, had the court adopted the views of the learned counsel for the appellants, it is possible a way might have been found to sustain the defendants' claim to the property, notwithstanding the pointed exceptions to propositions in the instructions to the jury, which were deemed erroneous. The case has been again carefully examined, and upon the theory of the counsel for the appellants, and with the aid of his very able brief, submitted upon the present motion, and the court sees no reason to interfere with the judgment already given. It is proper to say that the unusual delay in passing upon the present application has not been because of any intrinsic difficulties in the question presented, or any serious doubt as to the correctness of the former decision.

Isolated expressions may be found in elementary treatises, as well as in judicial opinions, which give color to the claim of the defendants, to hold the property in dispute as against the plaintiffs, but these were not intended to, and do not, give the rule by which this and like cases are controlled. They are all proper, in the connection in which they are found and for the purposes for which they were used, and ought not to receive any other interpretation than such as was designed by the authors. It must be conceded that upon the delivery of the goods to Jeffries by the plaintiffs, under the circumstances, the property passed to Jeffries, and the fact that the delivery was induced by fraud did not render the contract void. It was merely voidable at the instance of the plaintiffs, who might elect to disaffirm the contract and reclaim the property. That is, the contract of sale was defeasible at the election of the plaintiffs, the vendors, if the election was seasonably made, and the goods reclaimed in proper time, after the discovery of the fraud. The plaintiffs could lose the right by delay as against the wrong-doer, if, in consequence of such delay, his position should be changed, and they would have lost it absolutely if during the interval between the delivery of the goods, the vesting of this defeasible title in the purchaser, Jeffries, and the disaffirmance of the sale by the plaintiffs, the goods had been sold to an inno-

cent third party for a valuable consideration.] The superior equity of a purchaser of property from one who has acquired a title defeasible at the election of the former owner and vendor, by reason of fraud, to that of such owner seeking to reclaim his property, is based upon the fact that acting upon the evidence of title which the owner has permitted the wrong-doer to assume and possess, he has been induced to part with value, and will be the loser because of the credit given to the apparent ownership if he is compelled to surrender the property. The mere possession by the party claiming to hold will not sustain his claim, but the circumstances under, and consideration upon which he has acquired the possession are also material. Were it otherwise, an assignee for the benefit of creditors, or one who should take as collateral security for the payment of a precedent debt, would hold as against the original owner, which is not claimed and is contrary to the whole current of authority. Several things must concur to bar the claim of the defrauded vendor. 1. He must have parted with possession of his property with intent to pass the title to the wrong-doer, thus giving him the apparent right of disposal. If property is taken feloniously or without the consent of the owner the taker can make no title to it, even to an innocent purchaser with value. 2. A third party must have acquired title from the wrong-doer without notice of the defects in his title or knowledge of circumstances to put him to an inquiry as to the source of his title. And, 3. Such third party must have parted with value upon the faith of the apparent title of the wrong-doer, and his right to dispose of the property. If any of these elements are wanting the vendor seasonably pursuing his legal right may have his property. That this formula very closely resembles that by which an estoppel *in pais* is defined and limited is true, and this must necessarily be so, so long as the rights based upon each have the same equitable foundation. The defendants parted with no value, incurred no liability, and in no respect changed their situation in the interval between the delivery of the merchan-

dise by the plaintiffs to Jeffries, and their disaffirmance of the contract, and reclaiming the goods. In other words, they did nothing in consequence of such delivery to Jeffries or based upon his title and possession, and are in precisely the same situation as if the goods had never left the possession of the plaintiffs. They parted with their notes and incurred obligations upon the faith of the promise and agreement of Jeffries and upon his credit alone.

It is possible that the claim of the defendants to hold as *bona fide* purchasers for value is sustained by *Fenby* v. *Pritchard* (2 Sandf., 151), but this case is so at war with principles recognized as well settled by this court in analogous cases, that it cannot be regarded as well decided. The cases cited from Maine and Illinois (*Lee* v. *Kimball*, 45 Me., 172 ; *Butters* v. *Haughwout*, 42 Ill., 18), treat the case as analogous to a transfer of negotiable paper, and hold that a precedent debt is a valuable consideration for the transfer, and gives the transferee a good title as against the former owner. This is in direct conflict with the uniform decisions in this State, from *Bay* v. *Coddington* (5 J. Ch., 54; affirmed, 20 J. R., 637), to *Weaver* v. *Barden* (49 N. Y., 286 ; affirmed, *Turner* v. *Treadway*, 53 id., 650). One other case from Maine cited by the counsel for the appellants (*Titcomb* v. *Wood*, 38 Me., 561), recognizes the necessity of a valuable consideration, as that term is understood and used by the courts of this State, as necessary to give the purchaser of property from a fraudulent vendor a superior equity and title to that of the former owner, and find such a consideration in the transfer of property before then stolen from the defendant. The court say : "Here the defendant being the owner of stolen property, with his right and title unimpaired by the felony, transferred it to McClure for the property in question, in part payment, at least. This constituted a valuable consideration for his purchase, given at the time. Thus, it appears that he was a purchaser of the gold watch, *bona fide*, for a valuable consideration, and without notice of the fraud by which his vendor acquired it. This

gives him a superior equity and a better right, and enables him to hold the property against the defrauded vendor." *Hutton* v. *Cruttwell* (1 El. & Bl., 15), and *Mercer* v. *Peterson* (Law Rep. [2 Ex.], 304), relied upon in support of this application, presented questions under the English bankrupt acts, and merely decide that a transfer of effects, by the bankrupt, in performance of a prior executory agreement, for which a full consideration had been paid at the time of the agreement, was not within the condemnation of the act or affected by the proceedings in bankruptcy. They do not bear upon the question before us. In *Clough* v. *L. and N. W. R. Co.* (L. R. [7 Exch.], 26) the question was whether the claim to disaffirm the sale of the goods was seasonably made by the defrauded vendor. The vendor had first sought to stop the goods in *transitu*, which was an act in affirmance of the sale; but the transit was ended before notice reached the carrier. There was · no act avoiding the contract on the ground of fraud done by the vendor, until the plea in the action by Clough, who was found by the jury to be cognizant of, and a party to, the fraud in the purchase. No question of consideration or the validity of any sale of the goods by the fraudulent purchaser was in the case, or considered by the court. *Disbrow* v. *McDonald* (5 Bos., 130; S. C., *sub nom. Winne* v. *McDonald*, 39 N. Y., 233) was clearly within the rule upon the interpretation given to the transaction by the courts. It was said by the Superior Court that Perry & Co., the purchasers of the wheat, had the full possession of it in the precise manner that the contract between them and the plaintiffs contemplated, and that the purchase and possession of Perry were such as to enable him to confer upon a *bona fide* purchaser, a pledgee for value, a title valid as against the plaintiffs; and that the advance was made by the defendants after the delivery to Perry & Co. of the documentary evidence of title, and the wheat pledged as security at the time of the advance. The evidence upon the record in this court, it would seem, left the precise time when some of the occurrences took place in doubt, but that the specific wheat was

pledged, at the time of the advance, was established, although possibly, the muniments of title were not then delivered. The title and possession had vested in Perry & Co. at the time of the pledge; and that fact clearly distinguished that from the present case.

Judge BOSWORTH, in *Caldwell* v. *Bartlett* (3 Duer, 341) and *Keyser* v. *Harbeck* (id., 373), recognizes the doctrine that the advance must be made or consideration parted with upon the faith of the title of one in actual possession of the property, or the written evidence of title, to give an indefeasible title as against the true owner. All the authorities are direct and to the effect that no one but a *bona fide* purchaser, or pledgee for value — that is, one who gives value for or makes advances upon goods obtained from the owner by fraud or fraudulent representation — and that he who has paid value, or made advances, or incurred responsibilities upon the credit of them, can alone claim to hold them as against such owner. (*Root* v. *French*, 13 Wend., 573; *Mowrey* v. *Walsh*, 8 Cow., 238; *Hoffman* v. *Noble*, 6 Met., 68.) There is no good reason or equity in placing the burden of a fraudulent sale upon a *bona fide* vendor rather than upon a *bona fide* purchaser from the fraudulent vendee, unless the purchaser has parted with his money, or some value, upon the credit of possession or some evidence of title in the vendee, received from the original owner, and by means of which he has induced the purchaser to treat with him as owner.

The motion for a reargument must be denied.

All concur except JOHNSON, J., not sitting.

Motion denied.