CHARLES S. ARCHER, APPELLANT, *v.* JAMES O'BRIEN, SHERIFF OF THE CITY AND COUNTY OF NEW YORK, RESPONDENT.

*Fraudulent assignment — transfer of property to secure debt. — Intent of debtor in so doing to delay creditors — does not invalidate transfer.*

B., the owner of certain property, caused it to be transferred to C. to secure an indebtedness of his in C.'s favor. In an action brought to determine the rights of C. in this property, as against the other creditors of B., in which it was claimed that the transfer to C. was made with the intent on the part of B. to hinder, delay and defraud his creditors. *Held,* that to constitute a valid transfer by a debtor to his creditor, it was only necessary that three things should concur :

1. That there was a valid subsisting indebtedness on the part of the vendor or assignor to him.
2. That the property transferred was conveyed to secure the debt.
3. That it was reduced to possession.

Creditors as such in reference to a debtor's property are equal, and the principles which govern the transactions between a purchaser and a fraudulent vendee, are not applicable as between creditors of the same class.

APPEAL from a judgment in favor of the defendant, entered on the verdict of a jury, in an action of replevin.

This was an action brought by C. S. Archer, the above-named plaintiff and appellant, to test the title to the personal property and

machinery of a distillery, Nos. 46 and 48 Marion street, in the city of New York. The plaintiff claimed title thereto under, and by virtue of a bill of sale of the same from James England, in whose name the title stood, and possession acquired thereunder. The property was really owned by Marcus Hanlon, who was indebted to the plaintiff; to secure which indebtedness, the transfer from England was made at Hanlon's request. The sheriff claimed title thereto under, and by virtue of an attachment levied on the property at the suit of one Charles Doherty, an alleged creditor of Hanlon. There was a conflict of evidence as to the time of the execution of the bill of sale, and the attempt to take possession.

*Dennis McMahon,* for the appellant.

*A. J. Vanderpoel* and *Robert S. Green,* for the respondent.

BRADY, J. :

The plaintiff claimed property, seized by the defendant, as the owner by virtue of a transfer made to him to secure an indebtedness from the assignor, Marcus Hanlon. The bill of sale was executed by James England, who held the title for Hanlon. It was virtually conceded on the trial that the plaintiff was a *bona fide* creditor of Hanlon, but it was contended by the defendant, representing a creditor of Hanlon, that the transfer was made to hinder, delay and defraud creditors. The facts and circumstances disclosed by the proofs presented a complex case, and one, therefore, which required a statement or explanation of the various legal propositions that would govern various findings which the testimony might warrant, affecting the rights of the parties. The chief feature of the controversy, however, was whether the plaintiff was a purchaser in good faith. There was evidence for and against this issue, and it was presented in different aspects on different facts. The counsel for the plaintiff requested the learned judge who presided to charge as follows :

Third. If Archer had a lawful and *bona fide* debt against Hanlon, it was lawful for the latter to turn over to said Archer any of his personal property as security for said debt, if the latter took immediate possession thereof and continued such possession.

Fourth request. If the plaintiff took possession of said property involved in this suit, under a transfer made to him as security for a lawful debt, and such transfer was made and possession taken before the sheriff levied, then the plaintiff is entitled to recover, even though the owner of the property was Hanlon at the time it was so turned over.

Fifth request. That the title of the plaintiff under the circumstances stated in the fourth request, must prevail over the seizure by the sheriff under the attachment.

But the requests were refused, except as charged.

Upon the conclusion of the charge the plaintiff's counsel also requested the court to charge, "That if Mr. Archer was a *bona fide* creditor to the amount claimed by him on the eighth of December, and he took this bill of sale as security for that debt, if he had no notice of any fraudulent intent on the part of Hanlon to defraud his creditors, that he is entitled to hold this property against the other creditors of Hanlon, even though he parted with no money on the eighth of December," and the court refused to do so, otherwise than as charged. Are the exceptions thus taken of any advantage to the plaintiff? It cannot well be gainsayed that creditors, as such, in reference to a debtor's property, are equal, each possessing the right to obtain payment of his debt or security as an equivalent, and each is entitled to the benefit of superior diligence in that respect. There are no superior or prior equities in favor of either of the same class, and hence the principles which govern the transactions between a purchaser and a fraudulent vendee are not applicable. In the latter case, an assignment is subordinate to the superior and prior equity of the defrauded owner, and cannot be sustained without proof of a given consideration, other than the discharge of a precedent debt. (*Barnard* v. *Campbell*, 58 N. Y., 73.) The distinction is clear, palpable and readily understood. Authorities to sustain this view are not wanting. "When, said SELDEN, J., the transfer, instead of being to a stranger, is to a creditor of the vendor, a different principle applies. It is not necessary, in such a case, that the vendee, in order to protect himself from a claim by other creditors, should show any new consideration paid, for the obvious reason that his equity, at the time of the transfer, was the same as

theirs, and he is entitled to the universal rule, that when the equities are equal the legal title must prevail." And again, " there is no doubt that the debt paid or secured by the transfer must, in such case, be regarded as a valuable consideration within the section which saves the rights of *bona fide* purchasers, so that if the creditor acts in good faith and for the mere purpose of obtaining satisfaction of his own debt in accepting the transfer, he will acquire a valid title. There being no equity prior to his own to be overcome, the necessity which calls for proof of a new consideration in other cases does not exist." (*Seymour* v. *Wilson*, 19 N. Y. Rep., 417; *Towsley* v. *McDonald*, 32 Barbour, 604.) The requests marked three, four and five, were in harmony with this view, which was not charged, without qualifications which do not seem to be authorized, or in a manner which gave to the plaintiff all his rights. It was said in the charge: "If, upon the other hand, you find that it was an ordinary case of a debtor placing security in the hands of his creditor, to be applied by the creditor to the payment of his debts, *and there were no circumstances likely to cause a prudent man to make inquiry,* then Archer would be a purchaser in good faith and for a valuable consideration, and that purchase must be protected unless there is want of a change of possession." The burden of carrying the effect of " circumstances likely to cause a prudent man to make inquiry," when a debtor is willing to secure the debt due by the transfer of his property, cannot be imposed upon the creditor. He has the right to accept the security, and it matters not what the debtor intended otherwise to do. He has the right to secure his debt, and the debtor has the right to select him of all the others — to give him, in other words, a preference. The validity of the debt protects him, and the subject assigned for its payment. If the creditors wish to obtain the property thus transferred, they can pay the debt and be subrogated. The transfer in itself, no matter how honestly done, is an act by which creditors are hindered and delayed. The right to select one implies the right to defeat others, in all cases where the debtor's estate is insufficient to meet all his obligations. The creditor, when he discovers circumstances which would put a prudent man on inquiry, should in the preservation of his own rights, seek the payment of his debt, the

protection of his own property. Such a course is not only consistent with honesty, but is a duty which he owes to himself, the observation of which is sanctioned by the rules of law authorizing the preference which he obtains. The question is one of influence or diligence, and the result is the same whether it is acquired by voluntary appropriation by the debtor, or by attachment. If the diligent creditor is to be surrounded by the exigencies of a stranger taking title from a failing debtor under suspicious circumstances, then the rules of law declared in the charge are correct; otherwise they are not.

If the creditor is entitled to security they are not, because, as suggested, he takes the property only as an indemnity, and if it be in excess in value, coexisting equities in other creditors will enable them to relieve it by the payment of the lien, and then to have it applied to the payment of their debts. It cannot be correctly said that accepting a transfer of property as security for the payment of a valid claim, is taking it fraudulently or in bad faith. It is enough that it be taken for that purpose and reduced to possession. The debtor can make the selection of his creditor, and the creditor has the right to acquiesce in the choice made.

It was only necessary to authorize a verdict for the plaintiff, therefor, that three things should concur:

1. That there was a valid subsisting indebtedness on the part of the vendor or assignor to him.

2. That the property transferred was conveyed to secure the debt.

3. That it was reduced to possession.

The plaintiff was entitled to the requests made therefor. The effect of a fraudulent combination between the plaintiff and the assignor was one of the elements of the defense. It was the duty of the defendant to establish it by evidence, and not that of the plaintiff to anticipate it. He was entitled to the unqualified rule of law, that if the transfer was made to secure his debt, he could hold it, the other requisites existing. If the defendant desired any qualification of this rule, it was incumbent on him to ask for it. The presumptions of fraud did not arise from the plaintiff's transactions with Hanlon, as his case revealed it. It was the affirmative defense which asserted the fraudulent intent and co-operation. The

plaintiff, nevertheless, by the last request, assumed the burden of that to some extent, because he put his right to hold the property upon the proposition : That he was a *bona fide* creditor, taking the bill of sale as security, without notice of any fraudulent intent on the part of Hanlon to defraud his creditors. He was clearly entitled to this request without qualification, and it should have been allowed. There is no reason, in morals or in law, for holding a creditor securing his debt, responsible for a fraudulent intent on the part of his debtor, of which he has no notice. There is not, and there should not be, any obligation on the part of the creditor, whose claim the debtor is willing to secure, to examine into any or all the circumstances to ascertain what ulterior object the debtor has in view. He gets nothing but his debt out of the security, and to that he is entitled. If he make any arrangement to protect the debtor by holding the property for some purpose other than the payment of his demand, he loses all advantage by the unlawful combination. If he have no notice of a fraudulent intent, his rights should not be impaired. If he accept the subject assigned as a security for payment of his debt, he does no wrong; and to prevent him from doing it, would revolutionize the law of debtor and creditor as it is now declared in this State.

For these reasons I think the judgment should be reversed.

DAVIS, P. J., concurred. DANIELS, J., concurred in result.

Judgment reversed.