HENRY HOFFMAN, an infant, etc., Respondent, v. THE NEW
    YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY,
    Appellant.

The conductor of, or a brakeman upon, a railroad passenger train has authority to remove, in a lawful manner, a trespasser upon the platform of a car, whether the authority is conferred by the rules of the company or not; it is implied and is incident to his position.

The fact that the conductor or brakeman acts illegally in removing such a trespasser does not exonerate the company from liability; it is liable for

his action in the scope of his employment. In the absence of a finding or proof that the authority was exercised as a mere cover for accomplishing an independent and wrongful purpose of his own, the company is liable, although the act was reckless and illegal and a breach of his duty.

It is not an error of law for the court, in its charge, in commenting upon the testimony of a witness, to express an opinion as to his honesty.

In a case where the testimony is conflicting, great caution, however, should be used in this particular.

Plaintiff, a boy of eight years of age, jumped upon the steps of a car in a passenger train upon defendant's road, and sat down upon the platform of the car; he was kicked from the car by the conductor or a brakeman, while the train was running at a speed of about ten miles an hour, and was injured. In an action to recover damages, *held*, that the case was properly submitted to the jury, and the evidence justified a verdict for plaintiff.

The court, in its charge, referred to the plaintiff, who was a witness in his own behalf, as in its opinion, "a truthful youth." To this, defendant's counsel excepted; the court thereupon, while reiterating the opinion, added, "I did not say for that reason he ought to be believed." *Held* no error.

Upon the cross-examination of a witness for defendant, he was asked and permitted to answer under objection and exception as to his relations with the president of the defendant. *Held* no error; that it was within the range of a proper cross-examination, and was properly admitted in the discretion of the court.

After the accident plaintiff was taken to a police station-house, accompanied by V., who was a witness; a record was there kept of accidents; the record as to the case was offered in evidence by defendant; it appeared that the police sergeant who made it was dead; the record was excluded. *Held* no error; that it was not competent original evidence as to the cause of the accident, and was inadmissible to contradict V., as it did not appear that he furnished the information from which it was made, or was cognizant of its contents.

(Argued October 19, 1881; decided November 22, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 6, 1880, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 14 J. & S. 526.)

The action was brought to recover damages for injuries alleged to have been caused by the unlawful act of an employe of defendant. Plaintiff's evidence was to the effect that he jumped upon the steps of a car in a passenger train

on defendant's road, as the train was passing along a street in the city of New York, and sat down upon the platform of the car; that he was kicked therefrom by the conductor of the train or a brakeman, while the train was moving at the rate of about ten miles an hour, and was injured; that he was picked up by one Vogel, who was a witness for plaintiff; was carried to a police station-house, and from thence to a hospital. One Cross, the conductor of the train, was called as a witness for the defense, and on cross-examination was asked and permitted to answer, under objection and exception, questions eliciting the fact that he was grandson of Mr. Vanderbilt, defendant's president. It was proved that the police sergeant who made the entry of this accident in the police record was dead, the record was offered in evidence by defendant; it was objected to and excluded. Exception was made as to the charge of the court to the jury; the portion excepted to is set forth in the opinion.

*Samuel Hand* for appellant. The master could not lawfully remove a trespasser from a train in motion, hence it cannot be left to a jury to say that an act is within the scope of a servant's employment which the master might not lawfully do. (*Isaacs* v. *The Third Ave. R. R. Co.*, 47 N. Y. 122; *Frazer* v. *Freeman*, 43 id. 566; *Hughes* v. *N. Y. & N. H. R. R. Co.*, 4 J. & S. 222; *Wright* v. *Wilcox*, 19 Wend. 343.) The act in its inception and execution was wholly illegal, and entirely independent of, and outside the employment of the conductor. (8 T. R. 299; 2 Salk. 641; *Isaacs* v. *Third Ave. R. R. Co.*, 47 N. Y. 122.) A master can only be held liable for acts resulting in personal injury, claimed to have been done by the servant within the scope of his employment, when the act done was, in its inception, authorized and lawful, but in its execution more force was, used than necessary, from error in judgment, recklessness, zeal or infirmity of temper. (*Peck* v. *N. Y. C. & H. R. R. R. Co.*, 70 N. Y. 587; *Cohen* v. *D. R. R. Co.*, 69 id. 173.) The court erred in saying to the jury that he thought the plaintiff a truthful youth — "I mean so far

as a desire to tell the truth is concerned," and in repeating that belief when the exception was taken. (*Meyer* v. *Clark*, 45 N. Y. 285.) Jurors are bound to take the law from the court, and a positive direction from the bench, as to a question of fact, is as potent as if it pertained to a question of law. (*Allis* v. *Leonard*, 58 N. Y. 288; *Watson* v. *Gray*, 4 Keyes, 385.)

*Nelson Smith* for respondent. Assuming that the plaintiff was a trespasser, it was the conductor's duty to put him off, and his act in putting him off was clearly within the line and scope of his authority, and having been done negligently and improperly while the cars were in motion, the company is clearly liable for its consequences. (*Rounds* v. *D. L. & W. R. R. Co.*, 64 N. Y. 129; *Higgins* v. *Watervliet T. & R. Co.*, 46 id. 23.) To make a master liable for the wrongful act of a servant to the injury of a third person, it is sufficient to show that the servant was engaged at the time in doing his master's business, and was acting within the general scope of his authority, and this, although he departed from the private instructions of the master, abused his authority, was reckless in the performance of his duty, and inflicted unnecessary injury. (*Rounds* v. *D. L. & W. R. R. Co.*, 64 N. Y. 129; *Cohen* v. *Dry Dock, E. B. & B. R. R. Co.*, 69 id. 170–3; *Limpus* v. *General Omnibus Co.*, 1 H. & C. 528.) Where a master claims exemption from liability for the tortious act of his servant while apparently engaged in executing his orders, upon the ground that the servant was in fact pursuing his own purpose without regard to his master's business, and was acting willfully and maliciously, it is ordinarily a question to be determined by the jury. (*Rounds* v. *D. L. & W. R. R. Co.*, 3 How. 325; 5 T. & C. 475.) The test is whether the acts of the servant were within the scope of his employment, or in furtherance thereof, and were such as may fairly be said to have been authorized by the master, either expressly or as incident to the performance of the duties intrusted to the servant. (Wood's M. & S. 585; *Rounds* v. *D. L. & W. R. R. Co.*, 64 N. Y. 129; *Shea* v. *Sixth Ave. R. R. Co.*, 62 id. 180;

*Peck* v. *N. Y. C. & H. R. R. R. Co.*, 6 T. & C. [Sup. Ct.] 436.) The master can never escape liability for an abuse of authority by the servant. (*Peck* v. *N. Y. C. & H. R. R. R. Co.*, 6 T. & C. 436 ; *Garretzen* v. *Duenckel*, 50 Mo. 104 ; *Brennan* v. *Fairhaven & W. R. R. Co.*, 45 Ct. 284.) When the act, assuming it to have been properly performed, is one which the master himself, if present, might have done, it will be presumed that it was an act within the scope of the servant's authority, and the burden of proof of want of authority rests upon the defendant. (*Jackson* v. *Second Ave. R. R. Co.*, 47 N. Y. 274 ; *Rounds* v. *D. L. & W. R. R.*, 64 id. 129 ; *Garretzen* v. *Duenckel*, 50 Mo. 104 ; *Oliver* v. *Northern Transportation Co.*, 3 Oreg. 84 ; *Poulton* v. *The L. & S. W. R. Co.*, L. R., 2 Q. B. 534 ; Wood's M. & S. 585 ; *Shea* v. *Sixth Ave. R. R. Co.*, 62 N. Y. 180 ; *Peck* v. *N. Y. C. & H. R. R. R. Co.*, 6 T. & C. [Sup. Ct.] 436.) The defendant was as much liable for the act of the brakeman, baggageman and engineer as for that of the conductor. (*Bayley* v. *The M. S. & L Ry. Co.*, L. R., 8 C. P. 148, 153 ; *R. W. R. R. Co.* v. *Hack*, 66 Ill. 238 ; *Lovatt* v. *Salem R. R. Co.*, 9 Allen, 557.) An exception will not lie to the statement by the judge that he thought the plaintiff was a very intelligent and truthful youth. (3 Wait's Pr. 178, 205 ; *Winne* v. *McDonald*, 39 N. Y. 233 ; *Dows* v. *Bush*, 28 Barb. 157 ; *Carnes* v. *Platt*, 6 Rob. 270 ; *Mallory* v. *Tioga R. R. Co.*, 36 How. 202 ; *S. C.*, 1 Trans. App. 203 ; 3 Keyes, 354.)

ANDREWS, Ch. J. The jury have found that the plaintiff was kicked from the car while in motion, by the conductor or brakeman. There was a very sharp conflict of evidence upon this question. The testimony of the conductor and brakeman, and of a by-stander, tended strongly to show that neither the conductor, nor brakeman, touched, or said any thing to the plaintiff, and that he and other boys jumped off the platform of the car, as the brakeman came out of the door.

It is not claimed that the finding of the jury upon this issue is unsupported by evidence, and the point is not raised

by any exception, but it is insisted that the act of kicking a boy from a car while in motion, assuming that it was done by the conductor or brakeman, was not within the scope of any authority conferred by the defendant upon the person in charge of the train, but was an illegal, wanton, and willful act, for which the employer is not responsible.

By the general regulations adopted by the defendant, in force at the time of the transaction in question, the conductor has charge of the train, and is responsible for its safe and proper management, and brakemen, and other servants thereon, are subject to his orders. He is authorized to remove from the car persons who refuse to pay their fare, or are drunk, riotous, or unruly; but the regulations declare that in exercising this authority he must be governed by the provisions of law. The only provision of law on the subject is found in section 35 of the General Railroad Act (Laws of 1850, chap. 140), which provides, that if any passenger shall refuse to pay his fare, it shall be lawful for the conductor to put him and his baggage out of the cars, using no unnecessary force, at any usual stopping place, or near any dwelling-house, on stopping the train. The regulations defining the duties of brakemen, introduced by the defendant, are not printed in the case, and there is no proof before us of any specific authority given to brakemen to remove trespassers from the cars. It is conceded that authority in a conductor to remove a trespasser in a lawful manner, whether conferred by the rules or not, is implied, and is incident to his position. We think the same concession must be made in respect to the authority of a brakeman who finds a trespasser on the platform of a car. His duties do not primarily pertain to the protection of the cars against intruders; but he is a servant of the company on the train, concerned in its management, and fully cognizant of the obvious fact that intruders, who jump upon the train for a ride, without intention of becoming passengers, are wrongfully there. Suppose a train was standing still, and a trespasser was put off by force by a brakeman, using no unnecessary violence, would it not be a good defense to an action against him for

the assault, that he was brakeman, and did the act complained of in that capacity, although without express authority? The implied authority in such a case, is an inference from the nature of the business, and its actual daily exercise, according to common observation and experience. But assuming authority in the conductor or brakeman to remove a trespasser in a lawful manner, the question remains, whether when a conductor or brakeman, without warning or notice of any kind, kicks a boy of eight years from the platform of a car, while the train is running at a speed of ten miles an hour, he can be said to be acting within the scope of his employment, so as to make the company liable for the act. Assuming the case made by the plaintiff, the act was flagrant, reckless, and illegal; but the point is, was the act within the scope of the employment and authority? If it was, and the servant in doing what he did, undertook to act for the company, and not for himself or for his own ends, the company is not exonerated, although the servant may have deviated from instructions in executing the authority, or may have acted without judgment, or even brutally. The removal of trespassers from the cars, was, as we hold, within the implied authority of the defendant's servants on the train. The fact that they acted illegally in removing the plaintiff while the train was in motion, does not exonerate the defendant. In some cases, where the existence of an authority in the servant to do a particular act is in controversy, and the authority is sought to be established by inferences and implications, it may be a material circumstance bearing upon the non-existence of the authority sought to be implied, that the act was one which the master could not do himself, without a violation of law. But this fact would not be decisive. No doubt the kicking of the boy off the car, was not only a wrong to the plaintiff, but was a violation of the duty which the train servants owed to the defendant, to exercise proper care in executing the authority confided to them; but in most cases, where the master has been held liable for the acts of a servant, the tortious act was a breach of the servant's duty. In this case, the authority to

remove the plaintiff from the car was vested in the defendant's servants. The wrong consisted in the time and mode of exercising it. For this the defendant is responsible, unless the brakeman used his authority as a mere cover for accomplishing an independent and wrongful purpose of his own. The general subject has been recently considered in this court, and it is unnecessary further to elaborate it. (*Higgins* v. *The Watervliet Turnpike Co.*, 46 N. Y. 23; *Rounds* v. *D. L. & W. R. R. Co.*, 64 id. 129.) We think the court would not have been justified in taking the case from the jury.

The trial judge, in the course of his charge, said that the evidence for the plaintiff, came from Vogel, and this young man (referring to the plaintiff), " a very intelligent and, I think, truthful youth; I mean so far as a desire to tell the truth is concerned; but who was eight years old at the time the thing happened." The defendant's counsel, at the conclusion of the charge, excepted to " that part of the charge in which the court expressed the opinion that the plaintiff was a truthful young man." The court replied: "I did think so, but I did not say that for that reason he ought to be believed." The credit to be given to a witness, involves the consideration of his intention to tell the truth, as well as the accuracy of his memory; and in both branches it is for the jury. But we think it is not an error of law for a judge to indicate an opinion as to the honesty of a witness, in commenting upon his evidence. At the same time, in view of the just regard which is paid by jurors to the opinions of the judge, it is doubtless proper that in a case of conflicting evidence, he should use great caution in expressing his opinion. In this case, the judge did not assume to take the question of credibility from the jury; and when his attention was called to the subject by the exception, he unmistakably referred the matter to them. It would greatly embarrass the administration of justice, if every unguarded expression of opinion by the judge on a question of fact during a trial, should be subject to exception, as invading the province of a jury; and we have 'seen no well-considered

authority sustaining such a rule. ( *Winne* v. *McDonald*, 39 N. Y. 233.) The questions put to the witness Cross, touching his relation to Mr. Vanderbilt, the president of the defendant, were within the range of a proper cross-examination, and were properly admitted in the discretion of the judge. There was no error in excluding the police station record. It was not competent original evidence of the cause of the accident, and it was inadmissible to contradict Vogel, as he was not shown to have furnished the information from which it was made, or to have been cognizant of its contents. We think the charge covered all the material questions in the case, and although this court, on reading the appeal-book, may not be fully satisfied with the verdict, its function is performed, when it determines the alleged errors of law; and finding no valid exceptions in this case, the judgment should be affirmed.

All concur.

Judgment affirmed.