BARNARD and others *vs.* CAMPBELL and others.

When the owner of personal property makes an unconditional delivery to his vendee, with the intent to transfer the title, a *subsequent bona fide* purchaser from such vendee acquires a valid title, although the owner was induced to sell by the fraud of his vendee; and it is only *after* actual delivery to the fraudulent vendee, that a *bona fide* purchaser could rely upon the apparent ownership which the possession of the fraudulent vendee indicates, and thereby get a good title from him.

It is only upon the principle that the rightful owner of property is estopped from asserting his right when his act of conferring upon his vendee the possession has led to the payment by an innocent purchaser, that a *bona fide* purchaser can be protected. The doctrine has never been so far extended as to protect a purchaser when advancing the consideration to some one who did not, at the time, hold the property, or the *indicia* of its title.

A purchase of goods with a design not to pay for them is such a fraud as will avoid the sale.

When a sale is procured by fraud, no title passes to the vendee, but the vendor

Barnard *v.* Campbell.

still retains the legal right in the goods, and may reclaim them from the fraudulent vendee.

The general rule is, that a person from whom chattels have been obtained by fraud may follow them, and reclaim them from any one not being a *bona fide* purchaser for value.

From the 19th to the 24th of August, 1863, 1,300 bags of linseed were held in storage for the plaintiffs by L. at Boston. J. & Co. being on the eve of insolvency, and with the intent not to pay for it, bought the linseed of the plaintiffs, for $3 per bushel. On the 21st of August they accepted an offer of $2.70 per bushel for the linseed from the defendants, who on that day sent their notes to J. & Co. in payment. On the 24th of the same month, the plaintiffs gave J. & Co. an order on L. for the delivery of the seed, by means of which it was procured, and on the 25th of August was shipped to the defendants, at Brooklyn. The notes of the defendants were received by J. & Co. August 22d, and on the same day pledged by them with B. & Co. as collateral security for a loan. They were paid at maturity. On the 27th of August, J. & Co. failed.

*Held* 1. That conceding that the defendants were ignorant of any intended fraud on the part of J. & Co. and that they were honest dealers, in the whole transaction, they did not part with their notes on the credit of the possession or delivery of the linseed, .that being in the storehouse of L. at the time, and J. & Co. having then no possession of it, nor any *indicia* of title, nor any right or claim to it. It was then the property of the plaintiffs, who had not entrusted the possession or apparent ownership of the property to J. & Co., or put it in their power to deceive any innocent purchaser, prior to the 24th of August; and previous to that time the notes of the defendants had been voluntarily sent to J. & Co., and they had pledged them to B. & Co.

2. That the conduct of J. & Co., both before and after the delivery of the property, fully evinced their fraudulent intent, and they got no title to the linseed, as against the plaintiffs.

3. That the plaintiffs could have reclaimed the goods from J. & Co.

4. That the defendants, not being *bona fide* purchasers for value paid on the credit of the possession or delivery of the property, they could not resist the claim of the plaintiffs as its true owners.

APPEAL, by the plaintiffs, from a judgment entered upon the verdict of a jury.

The action was in the nature of replevin, to try the title to 1,370 bags of linseed.

The jury found a verdict for the defendants, and assessed the value of the property in controversy at $12,624.12.

*Pierrepont & Stanley,* for the appellants.

*Fullerton & Dunning,* for the respondents.

*By the Court,* FANCHER, J. There can be no doubt, on the evidence, that the purchase of the linseed by Jeffries & Co. was fraudulent. The sale was void as to them, and the plaintiffs could reclaim from them the property. In either case, whether the sale was conditional for cash on delivery, or upon a credit of ten days, it sufficiently appears by the evidence that Jeffries & Co. made the purchase on the eve of insolvency and with an intent not to pay for the linseed. Their conduct, both before and after the delivery of the property, fully evinces their fraudulent intent. It is, therefore, clear, they got no title to the linseed as against the plaintiffs. They agreed to give $3 per bushel, and on the same day, they sold the linseed at $2.70 per bushel; and this fact, with the testimony relating to the pledge of the defendants' notes, and to the insolvency of Jeffries & Co., shows the fraudulent intent. It has been held that a purchase of goods with a design not to pay for them, is such a fraud as will avoid the sale. (*King* v. *Phillips,* 8 *Bosw.* 603. *Ash* v. *Putnam,* 1 *Hill,* 302. *Bristol* v. *Wilsmore,* 1 *Barn. & Cress.* 514.) It is, also, well settled that when a sale is procured by fraud, no title passes to the vendee, but the vendor still retains the legal right in the goods, and may reclaim them from the fraudulent vendee. (*Root* v. *French,* 13 *Wend.* 570. *Hunter* v. *Hudson River Iron and Mach. Co.,* 20 *Barb.* 493. *Williams* v. *Birch,* 6 *Bosw.* 299.) It cannot be successfully disputed on the facts of this case, that the plaintiffs had the right to reclaim the linseed from Jeffries & Co.

The important question in the case is, whether the plaintiffs can reclaim the goods from the defendants? This question must be determined by the inquiry,

Barnard *v.* Campbell.

whether or not the defendants, at the time they received the linseed or title to it, were honest purchasers, and at the time paid a good consideration for it? Unless they were *bona fide* purchasers for value paid on the credit of the property, they cannot resist the claim of the plaintiffs as its true owners. The general rule has been frequently stated, that a person from whom chattels have been obtained by fraud, may follow them and reclaim them from any one not being a *bona fide* purchaser for value. (*Caldwell* v. *Bartlett*, 3 *Duer*, 341. *Beavers* v. *Lane*, 6 *id*. 232.) In *Root* v. *French*, (13 *Wend*. 570,) it is said that a person who has no title to property can convey none; but that a third person may acquire a good title from a fraudulent vendee, by giving him value for the property, or incurring some responsibility upon the credit of it, without notice of the fraud. In such a case, the *superior equity* of the honest purchaser is allowed to overcome the legal right of the owner ; and it is said to be the single instance in which our law divests the title to property without the owner's consent or default. ʼ(*Mowrey* v. *Walsh*, 8 *Cowen*, 238. *Hoffman* v. *Carow*, 22 *Wend*. 318. *Ash* v. *Putnam*, 1 *Hill*, 307.)

It appears that the 1,370 bags of linseed, for which this action is brought, were part of the cargo of the ship *Resolute*, from Calcutta ; that from the 19th to the 24th day of August, 1863, the linseed was held in storage for the plaintiffs, by A. C. Lombard, in his warehouse on East Boston wharf ; and that on the 24th day of August, 1863, the plaintiffs gave to Jeffries & Co. a written order on Lombard for the delivery of the seed, by means of which it was procured ; and on the 25th day of August, 1863, it was shipped, on board of the schooner *Reindeer*, to the defendants, to be delivered at the foot of Washington street, Brooklyn. The plaintiffs, therefore, did not part with the property until the 24th of August.

The bill of lading was dated the 25th, and was first seen by the defendants on the 26th of the same month.

On the 21st of August, Jeffries & Co. wrote to the defendants stating, in substance, that they had closed for the 1,800 bags of seed at $2.70, and had a schooner for it, and stating, also, they had telegraphed the defendants, asking them to send their notes, as they could place them. Thayer, one of the defendants, testifies that the telegram referred to in that letter was received by the defendants, and that they sent the notes to pay for the seed. The defendants, under date of August 21, 1863, wrote to Jeffries & Co., in which, among other things, they say: "Enclosed herein we hand you our notes at 90 days, Aug. 21, 1863, for $8,125, and $8,123, estimated value of the 1,800 bags linseed purchased to-day of you, say $16,000, cash, and interest $248, as requested in your telegram. Ship the seed as early as you can, for we are nearly out of Calcutta oil." The notes were received by Jeffries on the 22d of August, and, on the same day, they pledged them with Blake Brothers & Co. as collateral for a loan. Jeffries & Co. failed on the 27th of August, 1863. The notes of the defendants were paid at maturity.

Now, conceding that the defendants were ignorant of any intended fraud of Jeffries & Co., and that they were honest dealers in the whole transaction, the question recurs, did they part with their notes on the credit of the possession or delivery of the linseed? Clearly not. The linseed was in the storehouse of Lombard at the time, and Jeffries & Co. had then no possession of it, nor any *indicia* of title to it, nor any right or claim to it. It was then the property of the plaintiffs, and they had not entrusted the possession or apparent ownership of the property to Jeffries & Co.

The learned judge at the trial, charged, that "where the vendor, although he has been deceived by the buyer, has voluntarily parted with the possession, with the in-

Barnard *v.* Campbell.

tention at the time of parting with the title, and thereby clothing the buyer with the evidences of ownership, and then the buyers had subsequently sold the same property to a second buyer, who has bought the property honestly, in good faith and for a valuable consideration, of him, without any notice or knowledge of the manner in which he got it ; that last buyer will hold the property, even as against the first vendor.   The principle is founded upon this idea ; where one trusts a party with the possession and apparent ownership of property, voluntarily parting with the possession to him in the form of a sale, he puts it into the power of his vendee to deceive an innocent purchaser, and therefore he cannot enforce his right to retake the property against one whom that party has deceived ; provided the latter has acted all the while in entire good faith, and paid his money for the property."

But there was no ground on the evidence in this case, for the application of the rule thus stated by the judge. As the plaintiffs had not trusted to Jeffries & Co. the possession or apparent ownership of the seed, and had not parted with the possession of it, the plaintiffs did not put it into the power of Jeffries & Co. to deceive any innocent purchaser, prior to the 24th day of August ; and, before that time, the notes of the defendants had been voluntarily sent by them to Jeffries & Co., and they had pledged them to Blake & Co.   Had the possession of the linseed been acquired by Jeffries & Co., even though by a fraudulent purchase, and by means of such possession he was enabled to deliver the seed to the defendants, who parted with their notes on the faith of the supposed title to the seed which its delivery to them at the time conferred, the case would have been different.   But here, the plain fact is, the notes were sent by the defendants to Jeffries & Co., on their faith in the representations of Jeffries & Co. as to the purchase, and not on any faith in the actual possession or

delivery of the seed. The principle of law is this ; that when the owner of personal property makes an unconditional delivery to his vendee, with the intent to transfer the title, a *subsequent bona fide* purchaser from such vendee acquires a valid title, although the owner was induced to sell by the fraud of his vendee ; and it is only *after* actual delivery to the fraudulent vendee, that a *bona fide* purchaser could rely upon the apparent ownership which the possession of the fraudulent vendee indicates, and thereby get a good title from him. (*Smith* v. *Lynes, 5 . N. Y.* 46. *Beavers* v. *Lane, 6 Duer,* 232.)

It was said, on the argument, for the defendants, that they supposed Jeffries & Co. had the possession of the seed, and that they sent their notes, not to create a debt, but to make a purchase of the seed ; all which is true. But how could the defendants be deceived by the possession or apparent ownership of Jeffries & Co. when they had no possession or apparent ownership ? It is only upon the principle that the rightful owner is estopped from asserting his right when his act of conferring upon his vendee the possession has led to the payment by an innocent purchaser, that a *bona fide* purchaser can be protected. The doctrine has never been so far extended as to protect a purchaser when advancing the consideration to some one who did not at the time hold the property, or the *indicia* of its title. (*Holbrook* v. *Vose,* 6 *Bosw.* 104, 111.) In this case of *Holbrook* v. *Vose,* it was held that where advances were made on a promise to procure and deliver bills of lading, the advances were not made on the faith of the bills.

There was an exception to that part of the charge which states that the defendants stand in the light of *bona fide* purchasers for value. The judge had charged thus : ''I have already said (in the course of the remarks I made to the counsel on a motion to direct a verdict) that the defendants in this case, in my judgment, stand in a position, upon the evidence in the case,

of *bona fide* purchasers for value." We think this was erroneous, and that the judgment should be reversed and a new trial ordered, with costs to abide the event.

[First Department, General Term, at New York, January 6, 1873. *Ingraham* and *Fancher*, Justices.]