DEELEY *et al. v.* DWIGHT *et al.*

(*Common Pleas of New York City and County, General Term.* June 16, 1890.)

CHATTEL MORTGAGES—FAILURE TO FILE—BONA FIDE PURCHASERS.

 G. agreed to furnish certain machinery to defendants, who paid therefor in advance on G.'s representations that he had a perfect and unincumbered title. G. ordered the machinery of plaintiffs, and gave a chattel mortgage thereon to secure its price. The machinery was delivered to defendants, as G. received it from plaintiffs, considerable expense being incurred by defendants in setting it up in their factory. The mortgage was not filed until more than a year afterwards. Plaintiffs knew the machinery was for defendants' factory, but not that it had been paid for. *Held*, that defendants were not subsequent purchasers in good faith, within Laws N. Y. 1833, c. 279, § 1, providing that a chattel mortgage shall be void as against "subsequent purchasers in good faith," unless filed. DALY, J., dissenting.

Exceptions from trial term.

Action by Robert F. Deeley and Thomas F. Deeley against John Dwight and others to recover damages for the conversion of certain machinery which plaintiffs claimed by virtue of a chattel mortgage executed to them by one Gandolfo

in February, 1884. The defendant John Dwight claimed the machinery as purchaser from Gandolfo, and, as the plaintiffs' mortgage was not filed as required by statute, the defendants insist that it is void as against John Dwight as a purchaser in good faith, and also claim that the plaintiffs are estopped from asserting their rights under the mortgage. A verdict was directed for defendants, and plaintiffs' exceptions were ordered to be heard in the first instance at general term.

Argued before LARREMORE, C. J., and DALY and BISCHOFF, JJ.

*George P. Hotaling,* for plaintiffs.    *A. P. Ketcham* and *James A. Seaman,* for defendants.

LARREMORE, C. J.    The learned judge who tried this case evidently had grave doubt as to whether or not a correct disposition had been made of it, and therefore ordered the exceptions to be heard in the first instance at general term. After reflection and an examination of authorities, the opportunity for which is always limited at trial term, we have concluded that such doubt was well founded. It appears that defendants in or about September, 1883, entered into a contract with one Gandolfo to procure and sell to them certain articles of machinery to be selected by him. Gandolfo engaged plaintiffs to manufacture a portion of such machinery, and they agreed to do so, arranging to take a note and a chattel mortgage from Gandolfo upon the articles to secure the payment thereof. Such note and mortgage bear date, and were delivered in, February, 1884; but previous to such time, to-wit, in December, 1883, upon representations as to the nature of the proposed machinery, Gandolfo had secured payment in full therefor from the defendants to him. This fact must be deemed established for the purposes of this trial. See the admission of the defendant John Dwight at folio 292. The articles were delivered to Gandolfo, and by him to the defendants, but Gandolfo never, paid plaintiffs for them, and the latter claim in this action for the price thereof, under their chattel mortgage. Said mortgage was not filed until May, 1885.·

Plaintiffs' cause of action is founded on the mortgage, and defendants contend, on several grounds, that this instrument must be disregarded. It is claimed, in the first place, that the mortgage was void, because at the time of its execution some of the articles which it then purported to, and which it did eventually, cover were not in existence. But I cannot discover any substantial force in the argument for this view. The situation was that Gandolfo and plaintiffs made a contract for the manufacture of the machinery, one of the terms of which was that they should retain a lien upon the articles until paid for. I can see no good reason why a purchase-money mortgage on chattels should not be equally favored in law with a purchase-money mortgage on land. There is of course the distinction that a mortgage on land is theoretically only a lien, while a mortgage on personal property effects a conditional sale. We have therefore a sale to the vendee, and a simultaneous conditional sale back to the vendor. Still, this was practically the condition of affairs as to mortgages on real estate at common law, and is yet in many states of the Union; and everywhere a purchase-money mortgage is one of the securities most jealously protected by the courts. The element of futurity does not operate to take the present case out of the usual rules governing purchase-money mortgages. It rather tends to make such rules apply with greater force. A vendor contracts to manufacture certain specific articles, and also contracts for the security of resort to the articles themselves for his compensation. The only possible view to take under these circumstances is that the mortgage so given, which describes the articles to be made, attaches to the same as they are successively turned out and delivered to the vendee. See *Ludwig* v. *Kipp,* 20 Hun, 265; *Willetts* v. *Brown,* 42 Hun, 140, and cases there cited; *Stevens* v. *Watson,* 4 Abb. Dec. 302; *McCaffrey* v. *Woodin,* 65 N. Y. 459; *Wisner* v. *Ocumpaugh,* 71 N. Y. 113; *Coats* v. *Donnell,* 94 N. Y. 168.

Defendants, however, claim that such mortgage was void as to them, under the statute,[1] because it was not filed until over a year after it was made. The law makes a chattel mortgage, unless filed, void as against subsequent purchasers and mortgagees in good faith; and the question which was principally argued on this appeal is whether defendants can be held to be "subsequent purchasers in good faith," within the meaning of the act. I think this question has been so decisively answered in the negative by a long line of authorities in this state that little discussion will be required on our part. *Van Heusen* v. *Radcliffe,* 17 N. Y. 583; *Thompson* v. *Van Vechten,* 27 N. Y. 580; *Wood* v. *Robinson,* 22 N. Y. 564; *Weaver* v. *Barden,* 49 N. Y. 286; *Barnard* v. *Campbell,* 65 Barb. 286, 55 N. Y. 456, and 58 N. Y. 73; *Voorhis* v. *Olmstead,* 66 N. Y. 116; *Dusenbury* v. *Hulbert,* 59 N. Y. 541; *Kursheedt* v. *McCune,* 20 Abb. N. C. 265.

The principle is well established by these cases that a "subsequent purchaser in good faith" is one who parts with value at the time of the transfer of title to or delivery of the identical property, and on the faith of such transfer or delivery. The term cannot be held to include one who receives the property in question, either in pursuance of an executory contract of sale, or in satisfaction of an antecedent debt. It is not claimed that any transfer of title, either by constructive delivery or otherwise, was attempted to be made to defendants until the actual delivery of the machinery. On the other hand, it is proved conclusively, by the aforesaid admission of one of the defendants, that the money which defendants intended for the purchase price was all paid before the execution of the mortgage, and before the greater part, if not all, of the articles were made. Defendants did not, as has been argued here, make themselves "subsequent purchasers in good faith" by expending various sums in charge of the machinery, and in setting the same up in their factory. Such expenditures, though in one sense made upon the faith of the transfer and delivery of the property, have not the least significance in determining in what character they became purchasers, or whether they became purchasers at all. These expenses would necessarily have been incurred no matter how they acquired the machinery, whether as purchasers or hirers, or by gift. The determining factor is, when and upon what reliance was the purchase price paid? Here the purchase price was paid before defendants received the articles, and they relied simply upon Gandolfo's word that he would procure such articles for them. Defendants, therefore, were not subsequent purchasers in good faith within the definition of that phrase given by the authorities above cited, and it follows that, as between the parties to this action, the mortgage was valid, and is operative. *Van Heusen* v. *Radcliffe, supra; Thompson* v. *Van Vechten, supra; Kennedy* v. *Bank,* 23 Hun, 496. We are also of the opinion that plaintiffs may maintain the present action of conversion. Their right is disputed on the alleged ground that they are not entitled to the immediate possession of the chattels; but this is error. We have decided that the mortgage is valid, as between the parties to this litigation, and, consequently, all the rights it purports to confer on the mortgagees are valid. One of such rights is to take possession of and dispose of the mortgaged chattels in case of default in payment of the debt. Plaintiffs are therefore entitled to assume immediate possession, and, a demand for such chattels having been made, it follows that they may bring an action to recover such damages as they may have sustained by the unlawful detention of the same. *Jones* v. *Graham,* 77 N. Y. 628. The exception should be sustained, and a new trial ordered, with costs to abide the event.

BISCHOFF, J. I concur in the opinion of the chief justice that the payment of the purchase money by the defendant John Dwight to Joseph Gandolfo,

[1] Laws N. Y. 1833, c. 279, § 1.

under the latter's executory agreement, for the sale of the machinery in question, before such machinery had come into existence, and before Gandolfo himself had acquired title thereto by purchase from the plaintiffs, cannot constitute Dwight a purchaser for value, so as to defeat the lien of a chattel mortgage which was not filed in the manner provided by statute; and that the chattel mortgage, given by Gandolfo to the plaintiffs at the time of his agreement with them to purchase the machinery subsequently delivered to him, was valid and operative as between the parties thereto, the lien attaching upon the delivery of the machinery. Nevertheless, if it had been conceded upon the trial, either expressly or by failure of the plaintiffs to contradict evidence to that effect, that the plaintiffs were aware of the arrangement between Gandolfo and the defendants for the sale of the machinery, and of Gandolfo's representations to the defendants that he was the absolute owner of the machinery, and could convey a perfect title thereto, and that, notwithstanding such knowledge, the plaintiffs had permitted defendants, in reliance upon Gandolfo's representations, to expend large sums in alterations and improvements upon this machinery, largely in excess of its original value, the plaintiffs should now be estopped from asserting, as against the defendants, any claim to this machinery under the chattel mortgage to them. A careful examination of the evidence, however, fails to show that the plaintiffs knew of the arrangement between Dwight and Gandolfo, and of the latter's representations of his absolute ownership and ability to confer an unincumbered title. In fact, Robert Deeley, one of the plaintiffs, examined as a witness in his own behalf, distinctly says that the machinery was agreed to be sold to Gandolfo; that it was delivered upon trucks supplied by Gandolfo; that Gandolfo represented to him that the machinery was to be put up at Dwight's factory for experimental purposes only; and that he was wholly ignorant of any intention on Gandolfo's part to deliver the machinery to Dwight. From the absence of evidence tending to charge the plaintiffs with knowledge of Gandolfo's executory contract of sale with the defendants, and of his intention to deliver the machinery to Dwight, pursuant to such contract, and that Dwight, relying upon Gandolfo's representation of absolute ownership and ability to convey an unincumbered title, intended to expend the money which was said to have been expended in alterations and improvements, and further because of Robert Deeley's disavowal of any such knowledge, there does not appear any sufficient ground for holding the plaintiffs estopped from asserting their claim under their chattel mortgage, as against the defendants. If the defendants were duped, it was, so far as was shown on the trial, in consequence of the misrepresentations of. Gandolfo, and of his fraudulent concealment of his mortgage to plaintiffs, and not because of any act of the plaintiffs, or because of their omission to do anything, which, in view of their want of knowledge of the arrangements between Dwight and Gandolfo, could reasonably have been expected of them. The plaintiffs' exception to the learned trial justice's direction of a verdict for the defendants should therefore be sustained, and a new trial ordered, with costs to abide the event.

DALY, J., (*dissenting.*) It is substantially shown by evidence that about September, 1883, one Gandolfo agreed to furnish the defendant John Dwight certain specified machinery at the estimated cost of $5,660. This machinery was intended for Dwight's factory, and was to be put up and started running in connection with other machinery at an additional expense, which ultimately approached $7,000. Between October 23d and December 12th, Dwight paid Gandolfo in full for the specified machinery, although it had not then been delivered, Gandolfo representing at first that it was in process of manufacture, and afterwards that it was stored waiting for the completion of alterations in Dwight's factory, where it was to be placed. In February, 1884, Gandolfo ordered the machinery in question in this action from the plaintiffs, at a cost of $4,700, giving them then his note and a chattel mortgage to se-

cure the purchase price. The-plaintiffs did not file their mortgage, and Gandolfo went on and delivered the machinery as he received it from plaintiffs to· Dwight, pursuant to' the original contract made in September, 1883, Dwight expending in the erection and fitting of it in his factory, and the purchase of necessary machinery for that purpose, about the sum of $7,000. The delivery was made between February and April, 1884. The chattel mortgage was not filed until May, 1885. It is claimed by the plaintiffs that their mortgage,: notwithstanding their failure to file it, was good as against Dwight, because,. at the time of the delivery of the machinery to him, he did not part with anything of value to Gandolfo, having paid in full for it, in advance, by the pay-- ments made in· the previous year. It is undisputed that such advance payments included payment for the machinery in question, and· the right of defendant John Dwight to claim the position of a purchaser for value at the time of delivery was open to question upon the authorities. *Kursheedt* v. *McCune*, 20 Abb. N. C. 265; *Dusenbury* v. *Hulbert*, 59 N. Y. 541; *Barnard* v. *Campbell*, 65 Barb. 286; affirmed, 55 N. Y. 456, and 58 N. Y. 79;. *Voorhis* v. *Olmstead*, 66 N. Y. 113. But under the circumstances it would seem that the plaintiffs should be estopped from asserting their mortgage· against the defendants. They sold and delivered their goods to Gandolfo, conferring upon him the apparent unincumbered title, withholding their mortgage from the files, and permitting him to impose upon the defendants, to the latter's damage, in the large outlay needed to set up the machinery and make it available. They knew that the machinery was to be set up in the factory of defendants, and must have known that large expenses would be· incurred for that purpose. The act of withholding their mortgage from the· files was evidently intended to induce the defendants to go on and deal with Gandolfo as one having an unincumbered title; and it did have that effect. The advantages to the plaintiffs by this course are conspicuous. Had they filed their mortgage or asserted their rights in any way at the time of delivery, the result would have been that the defendants could have refused to· receive the machinery from Gandolfo, and the plaintiffs would have had it back upon their hands. By the plaintiffs' taking the course they did, the defendants were induced to make such outlays as would practically force them· to pay the purchase price over again to plaintiffs, or lose the benefit of their subsequent expenditures. They were therefore induced by plaintiffs' act to· alter their position, and are brought within the exception noted in one of the cases above cited, and relied upon by the plaintiffs. *Barnard* v. *Campbell*, 58 N. Y. 73–76. The court there lays stress upon the fact that the purchasers parted with no value, incurred no liability, and in no respect changed their situation in the interval between the delivery of the merchandise by the· plaintiffs to Jeffries and their disaffirmance of the contract and reclaiming the· goods. In other words, they did nothing in consequence of such delivery. So, in *Weaver* v. *Barden*, 49 N. Y. 286, it is said that the purchaser must have parted with something of value upon the faith of his purchase before he· had ·notice of the prior right. In this case the expenditures in setting up the· machinery, the purchase of shafting, belting, pulleys, etc., and for work and labor, amounting to nearly $7,000, largely exceed the value of the machinery itself, $4,700. This large expense was incurred in good faith in reliance· upon Gandolfo's apparent absolute ownership and unincumbered title, for which the plaintiffs are directly responsible. The case is within the principle· stated in the opinion of DANFORTH, J., in *Dows* v. *Kidder*, 84 N. Y. 128, and the cases generally on the law of estoppel. The knowledge by the plaintiffs that Gandolfo was to set up the machinery in defendants' premises, the delivery of possession to him, and the suppression of their mortgage, taken together, show an intent to induce the third parties with whom Gandolfo might deal to treat his title as unincumbered. The defendants should have judgment upon their verdict, and the motion for a new trial should be denied, with costs.