Freedman, J.
This is an unusually important case, and as such I have taken great pains to come to a correct conclusion. *675 The main question in the case is, whether the managing owners of a vessel can be held liable in damages for an assault committed by the captain on the high sea upon a member of the crew.
It is claimed, in the first place, that such an act is the act of a fellow servant, for which the employer is not liable. In this I cannot concur.
The captain of a ship during a voyage is in full control of the ship. He is the supreme commander, and from the necessities of the case everything necessary to the preservation of the ship and the successful prosecution of the voyage is left to his discretion.
It is his duty to preserve and enforce discipline among the crew, and, if the emergency calls for it, he may inflict punishment and even order a man to be put in irons. He is, therefore, from the very necessities of the case, the full representative of the owner, the alter ego, and not a mere fellow servant.
In the second place it is claimed that the assault in this case, which resulted in the fracture of plaintiff’s leg, was a wanton, willful and malicious act, and that therefore the defendants are not liable.
A careful review of the reported cases bearing upon this point, of which only a few can be referred to now, has led me to the following conclusions:
Ever since the decision of Mott v. The Consumers' Ice Company, 73 N. Y., 543, and the decision of Hoffman v. The New York Central & Hudson River R. R. Co., 87 N. Y., 25, it has been the settled law of this state, that for the wanton and willful acts of a servant, done within the general scope of his employment, while engaged in his master’s business, and with a view to the furtherance of that business and the master’s interests, the latter-is just as much responsible as for acts negligently done.
It is only when the servant without regard to his service, or to accomplish some purpose of his own, acts maliciously, that the master is not liable.
The rule has never been relaxed, and in a certain class of cases has been made even more stringent, so that now a common carrier of passengers as against a passenger can no longer claim exemption from liability for the willful act of a servant on the ground that the servant acted maliciously. Stewart v. The Brooklyn & Cross-town R. R. Co., 90 N. Y., 588; and Dwinelle v. The New York Central & Hudson River R. R. Co., 120 id., 117; 30 N. Y. State Rep., 578.
The rule being as stated, I cannot see why an exception should be made in favor of the managing owner of a vessel as against the willful and wanton acts of the captain done within the general course and scope of his employment as such. The exception cannot be made upon principle, and I can find nothing in the maritime law or the law of shipping, or any statute which calls for it.
It has been urged that the present action is without precedent, and that if it were sustained the ruling would be destructive to commerce and encourage the institution of numerous suits with which the court should not be burdened.
*676 A judge cannot permit himself to be influenced by such considerations, if the justice of a case requires that a precedent should be established and if the precedent can be established upon principle and without violation of any settled rule of law.
In the present case justice does require that a precedent should be established, so far as this state is concerned, for outside of this state I have found a few cases in favor of the proposition that the action will lie.
In Spencer v. Kelley, 32 Fed. Rep., 838, the court said that an owner of a vessel is liable to a seaman for injuries sustained by an assault by the captain, provided that in the infliction of the injuries complained of the captain was acting within the scope of his duty and in the exercise of his control over the plaintiff.
In Hunt v. Colburn, 1 Sprague, 215, the owners were held liable to seamen for damages sustained by reason of their being left in a foreign port by the act of the master (see, also, Croucher v. Oakman, 3 Allen, 185), in which case the owners were made responsible for the tortious act of the master in shooting and wounding a mate, compelling him to remain on shore and rendering him unable to earn his wages.
In McGuire v. Golden Gate, McAllister, 104, the owners of a vessel were held liable for the master’s torts inflicted while in the avowed preservation of discipline.
The true test always is, was the act complained of done by the captain within the general course and scope of his employment as such, and with a view to further the interests of his principal ?
Moreover, I do not believe that to sustain the present action will have the disastrous consequences to commerce that have been pictured.
The result will simply call upon owners to inquire into the characters of their captains more fully than perhaps they do now, and will make owners more careful in the selection of their captains.
As soon as the owners do this, the captains will learn of it and will try to accommodate themselves to the new order of things. In this way humane feelings will be aroused and dispositions to cruelty will be checked, and thus the interests of humanity will be greatly promoted. The owners are at liberty to arrange with the captains as to indemnity against this liability, and thus may protect themselves. So, if a captain is well known to be a man of well-balanced mind and even temper, the crew, on enlisting, may be found willing to exempt the owners from liability by a special provision in the shipping articles to that effect.
But it is wholly unnecessary to consider consequences any farther.
Having been unable to find a valid reason for making an exception to a general rule of law which is well settled, it is my duty to,enforce the rule.
The motion to dismiss the complaint must, therefore, be denied, and the case must be submitted to the jury upon the question whether the assault complained of was or was not committed by the captain within the general course and scope of his employment *677 as such. But as the cause of action does not survive, the complaint must be dismissed against the defendants who represent estates, unless the plaintiff shows affirmatively that the respective shares now held by said estates were so held at the time at which plaintiff’s cause of action accrued.
At the close of the evidence on both sides, the case was submitted to the jury under the following charge, viz.:
Freedman, J.
Gentlemen of the jury: This is a case of unimportance, requires great care your deliberations, and in your determinations.
You will be called upon to determine certain questions of fact which I shall submit to you, but in their determination it will be your duty to take the law as I shall lay it down for your guidance, and to apply it to the facts as you may find them. For the law of the case I alone am responsible, and no part of that responsibility is yours.
Now the defendants in this action are sought to be held as the managing owners of the vessel in question for the consequences of an assault committed by the captain of the vessel on the home voyage upon the plaintiff, a seaman on board of the vessel, which resulted in the fracture of plaintiff’s leg.
Now the captain of a ship during a voyage is in full control of •the ship. He is the supreme commander, and from the necessities of the case everything necessary to the preservation of the ship and the successful prosecution of the voyage is left to his discretion.
Among other things it is necessary that he should preserve and enforce discipline among the crew, and to that end he is justified, if the circumstances render it necessary, to use the necessary amount of force. He may even order a man to be put in irons if an emergency calls for it.
In trying to ascertain the amount of force to be legally used by him on a particular occasion, great allowance must be made for the infirmities of human nature, the necessities of a particular occasion, and the character of the man or men the captain has to deal with, and the owners of the ship are not to be held liable for an erroneous judgment on his part as to the amount of force to be used leading to the use of excessive force if there were reasons, or there was some reason, in the appearances for the resort to force.
It is only for the employment of excessive force which is wholly unjustifiable upon any state of facts which the captain had to deal with, or which he might have reason to apprehend, that the owners can be held, and then only if such force was used in the performance by the captain of something which he assumed to do in the line or within the scope of his duty, or supposed duty, to the owner. In other words, it must have occurred in the line or within the scope of his employment by the owner.
If, therefore, the captain in this case committed an assault upon the plaintiff maliciously and for some purpose of his own, and wholly unconnected with any duty which he owed to the defendants as owners at the time, or which he assumed to discharge, *678 the defendants are not liable, and they are entitled to your verdict. But if the plaintiff was struck while the captain assumed to do something within the general course and scope of his employment as captain, and with a view to further the interests of the owners, you must determine whether or not there was an excess of force used within the rules laid down by me. If there was, the defendants are liable for the legitimate consequences of the use of such excessive force.
The burden of proof is upon the plaintiff throughout, and he must establish a case within the rules laid down by me, and he must establish.it by a preponderance of evidence. By that I mean, not a preponderance-in point of number of witnesses, but a preponderance of facts and circumstances which carry conviction to your minds.
An evenly balanced case is not enough. If, therefore, upon a consideration of all the facts and circumstances, inclusive of probabilities, which you have a right to consider, you should come to the conclusion that the case is so evenly balanced that you cannot tell upon which side the evidence preponderates, in that case the defendants are entitled to your verdict.
How, you have seen the plaintiff upon the stand and you have heard his testimony, and you observed the manner in' which he gave it; the same may be said with regard to the other witnesses in the case. You have heard the testimony of all the witnesses in the case, and it is for you to say, upon a consideration of all the circumstances, how much or how little credit you will attach to the testimony of each and every one of them.
If the plaintiff has not made out such a case as I have told you it is necessary for him to make out in order to recover, the defendants are entitled to a verdict.
So, if you should believe the testimony of the second mate, and upon it should find that the injury was inflicted upon the plaintiff by the first mate with a marling-spike, the defendants are entitled to a verdict, because, in the first place, the plaintiff has given no evidence that the first mate at the time acted within the general scope and course of his employment as mate, and secondly, because, under the circumstances of this case, the first mate was a fellow servant as regards the plaintiff.
But if the plaintiff has made out a case within all the rules laid down by me, you must go farther, and it will then become your duty to assess the damages to which he is entitled.
How these damages are to be assessed upon the theory that the plaintiff, if he is entitled to recover at all, should have a fair compensation for the injury actually sustained.
As the defendants neither authorized the assault nor connived at it or ratified it, they are in no aspect that can be taken of the evidence, liable in • exemplary or punitive damages. But, in assessing the damages to which the plaintiff is entitled, if he is entitled to recover at all, you may consider the nature and extent of his injuries, his inability to attend to any business for a certain period, and his inability thereafter to attend to business in his usual and accustomed way, and his physical pain and mental *679 suffering. If upon the whole case you are satisfied that the injuries will involve consequences in the future, you may consider those consequences, provided upon the evidence you can say, with reasonable certainty, that they are the direct and natural result of the assault for which the defendants are liable.
Any consequences which are merely likely to result from the first injury, must be disregarded. For any remote consequences •which are not the direct and natural result of the assault you can award no compensation.
You, therefore, cannot give the plaintiff anything for any consequences flowing from the fact that he was subject to chills and fever. So no damages can be given solely by reason of the fact that the vessel had no doctor or surgeon on board, for the owners were under no obligation to have one on board; nor can. any damages be given for the reason that the vessel did not put into the port of Havana or any other port
This, I believe, is all that the facts of the case call upon me to say. If there is anything else which counsel desire me to submit, they should speak.
The jury then withdrew, and after some time they returned with a verdict in favor of the plaintiff in the sum of $1,200.